## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

AMANDA BEAN                                                        PLAINTIFF

V.                              NO. 1:12CV00131-JTR

CAROLYN W. COLVIN,                                               DEFENDANT
Acting Commissioner,
Social Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Amanda Bean, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs, *Docs. #13, #16*, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

---

[1] *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On May 19, 2010, Plaintiff filed an application for SSI, alleging disability since December 20, 2009. (Tr. 69-77.) In her Disability Report-Adult, she stated that she was disabled because of bipolar disorder, major depression, and Lyme disease. (Tr. 114.) After her claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").

On July 11, 2012, the ALJ conducted an administrative hearing, where Plaintiff and a vocational expert testified. (Tr. 420-48.) At the time of the hearing, Plaintiff was thirty-four years old and had completed high school, three years of college, and training as a certified nursing assistant. (Tr. 120, 426, 444.) She had past work as a cashier/checker, medical assistant, and housekeeper. (Tr. 105-09, 115, 444.)

In his August 14, 2012 decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her SSI application date; (2) had "severe" impairments consisting of major depressive disorder and anxiety disorder; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the

residual functional capacity ("RFC") to perform work at all exertional levels but had certain nonexertional limitations;[2] (5) could not perform her past relevant work; but (6) could perform other work existing in significant numbers in the national economy, with examples being a cashier II, fast food worker, and cook's helper. (Tr. 12-24.) Accordingly, the ALJ concluded that Plaintiff was not disabled. *See* 20 C.F.R. § 416.920 (explaining the sequential evaluation process).

On November 7, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 3-6.) Plaintiff then filed her Complaint appealing that decision to this Court. *Doc. #2.*

In Plaintiff's Appeal Brief, she argues that the ALJ erred in relying on the vocational expert's testimony that Plaintiff could perform other jobs because the testimony was in response to a hypothetical question that understated Plaintiff's mental limitations. Specifically, Plaintiff argues that the hypothetical was defective because it was based on an RFC that: (1) was "essentially ... nothing more than a limitation to unskilled work"; and (2) did not consider Plaintiff's low Global

---

[2]The ALJ concluded that, nonexertionally, Plaintiff was limited to unskilled work where interpersonal contact is only incidental to the work performed; the complexity of tasks is learned and performed by rote, contains few variables, and requires little judgment; and any supervision is simple, direct and concrete. (Tr. 16-17.)

Assessment of Functioning (GAF) scores.

For the reasons discussed below, the Court concludes that Plaintiff's arguments are without merit.

## II. Discussion

A hypothetical question to a vocational expert should set forth all impairments supported by substantial evidence in the record and accepted as true by the ALJ, and should "capture the concrete consequences of those impairments." *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). In this case, the mental impairments described in the ALJ's hypothetical are supported by substantial evidence in the record as a whole,[3] and the ALJ's hypothetical adequately accounted for any related

---

[3]The ALJ discussed: (1) the observations and opinions of Mark Lehman, Ph.D., who performed a psychological evaluation and mental status examination on September 1, 2010, and concluded that Plaintiff's mental disorders "should continue to respond to psychiatric treatment, provided she stays sober, attends her appointments and takes her medications exactly as her physician prescribes," (Tr. 15-16, 18-19, 125-32); (2) records from two mental health facilities where Plaintiff received inpatient and outpatient treatment from March to September 2010, and July 2012, showing that she sought treatment primarily when she was out of medications, and "respond[ed] readily to treatment" (Tr. 19-20, 133-224, 373-74); (3) hospital records from May to December 2010, and June 2012, reflecting that Plaintiff frequently presented to the emergency room with various complaints when she was out of medications and was seeking shelter and food due to homelessness (Tr. 20-21, 225-322, 375-400, 402-16); (4) medical records from the Arkansas Department of Correction showing that she was given Lithium for her mental symptomatology while incarcerated from May 2011 to April 2012 (Tr. 20, 344-68); (5) the opinions and findings of a state agency psychological consultant (Tr. 22, 323-40); (6) evidence that Plaintiff's symptoms were "fairly well controlled" when she was compliant with treatment and medication, and her "long history"

functional limitations.

As Plaintiff points out, the regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). However, in addition to finding the hypothetical individual limited to unskilled work, the ALJ also restricted the individual to work: (1) "where interpersonal contact is only incidental to the work performed"; (2) the "complexity of any task would need to be learned and performed by rote" and "contain few variables"; and (3) the "supervision required would need to be simple, direct and concrete." (Tr. 444-45.) *See Johnson v. Astrue*, 627 F.3d 316, 320-21 (8th Cir. 2010) (ALJ accounted for personality disorders, anxiety and attention deficit disorder by restricting RFC to "simple unskilled and low-semiskilled work" with concrete instructions, and requiring only superficial contact with supervisors, co-workers and the public); *Hulsey v. Astrue*, 622 F.3d 917, 925 (8th Cir. 2010) (restriction to "work of an unskilled nature involving only superficial interpersonal contact" adequately accounted for limitations caused by claimant's anxiety, depression and somatoform disorder); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (ALJ properly accounted for claimant's major depression and

---

of non-compliance (Tr. 16, 18, 20); (7) her conviction and incarceration for selling some of her medication to an undercover policeman (Tr. 17-18); and (8) her daily activities, social support network, educational background and work record (Tr. 15-16, 17-18, 19).

psychotic symptoms that caused moderate work-related limitations by finding that he could perform simple work with few variables, interpersonal contact was incidental to tasks performed, and supervision was simple, direct and concrete).

In addition, the ALJ properly evaluated the GAF scores in the record.[4] Contrary to Plaintiff's contention, the ALJ did not ignore the GAF scores or find them irrelevant. Rather, he expressly stated in his decision that he had "carefully reviewed" the GAF scores and chose "not to rely on them *as a basis for [a] finding of disability.*" (Tr. 21.) *See also id.* (finding that Plaintiff's GAF scores "do not necessarily *correlate with disability*"); Tr. 22 (declining to "find the GAF scores *controlling* in said case") (emphasis added). The ALJ reached this conclusion only after discussing, at length, relevant legal and regulatory authority, including Eighth Circuit precedents,[5] the federal regulations,[6] and the Diagnostic and Statistical

---

[4]Plaintiff's medical records contain the following GAF scores: 38 (03-13-10); 48 (03-16-10); 48 (03-17-10); 48, 50 (05-17-10); 49 (05-19-10); 49 (06-10-10); 49 (07-02-10); 49 (08-11-10); 52 (09-01-10); 55 (09-17-10). (Tr. 131, 136, 140, 152, 163, 182, 191, 196, 211, 216, 223.) *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Rev. 2000) (DSM-IV-TR) (GAF of 31-40 indicates the individual has an "impairment in reality testing or communication ... or [a] major impairment" in several areas, such as work or school, family relations, judgment, thinking, or mood; GAF of 41-50 indicates "[s]erious symptoms ... or any serious impairment in social, occupational, or school functioning"; GAF of 51-60 indicates "[m]oderate symptoms ... or moderate difficulty" in functioning).

[5]"While GAF scores are 'certainly pieces of the hypothetical puzzle in assessing a claimant's functioning, they are not dispositive in Social Security cases.'" (Tr. 21) (citing *Wilson v. Astrue*, 493 F.3d 965, 968 (8th Cir. 2007), *vacated on other grounds*, 130 S. Ct.

Manual of Mental Disorders.[7] (Tr. 21-22.)

The ALJ also properly stated that, where GAF scores conflict with other objective medical evidence of record, the ALJ must rely on the overall medical evidence of record, testimony, and other factors utilizing the criteria set forth in the case of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), Social Security Ruling 96-7p, and other relevant authority. (Tr. 21-22.) *See Jones v. Astrue*, 619 F.3d 963, 972-74 & n.4 (8th Cir. 2010). As explained, the ALJ's decision shows that he considered multiple valid factors, including the GAF scores, in determining Plaintiff's RFC.

Finally, this case is distinguishable from *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), on which Plaintiff relies. In *Pate-Fires*, the Eighth Circuit held that the ALJ erred in failing "to discuss or consider the many GAF scores below 50." *Id.* at 944. Here, as explained, the ALJ "carefully reviewed" the GAF scores and discussed the law at length, but declined to find the scores controlling in light of other

---

3450 (2010), and *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010)).

[6]The ALJ twice referenced *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746 (Aug. 21, 2000): (1) "GAF scores are not directly correlative to Social Security severity assessments," *id.* at 50764-65 (Tr. 21); and (2) "The Commissioner has specifically declined to endorse the GAF scale for use in disability programs and has stated that the GAF scale 'does not have a direct correlation to the severity requirements in our mental disorders listing,'" *id.* (Tr. 22).

[7]"A GAF score reflects a clinician's assessment of an individual's overall level of functioning only at the time of the evaluation, and is intended for use in planning treatment and measuring its impact." (Tr. 21) (*citing* DSM-IV-TR, at 32-33).

evidence in the record. In addition, unlike the claimant in *Pate-Fires*, who had scores as low as 10 and 20 and only four scores above 50 during a six-year period, Plaintiff had only a six-month history of GAF scores between 38 and 55. *See Jones*, 619 F.3d at 974 & n.4 (distinguishing from *Pate-Fires* because the claimant did *not* have a lengthy history of low GAF scores, scores were inconsistent with other evidence in the record, and the ALJ referenced the federal regulations and explained why he was discrediting the scores).

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is

not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner

is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this __20th__ day of November, 2013.

_____
UNITED STATES MAGISTRATE JUDGE